**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

WILLIAM ASBURY,

        **Plaintiff,**

v.                            **No. CIV 06-1235 BB/ACT**

PETE GEREN,
SECRETARY OF THE ARMY,

        **Defendant.**


## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's motion for summary judgment. [Doc. 31].  Plaintiff alleges that his former employer discriminated against him because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a, by failing to promote him on two occasions and by creating a hostile work environment. The Court has examined the parties' submissions and the relevant legal authorities, and, for the reasons set forth below, finds that Defendant's motion for summary judgment should be GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff William L. Asbury ("Asbury") was formerly employed by Defendant, the United States Army ("Army"),[1] as a GS-14 Supervisory Electronics Engineer at White Sands Missile Range (WSMR), New Mexico.  Asbury retired from WSMR on September 3, 2006.  He was 56.

_____

[1] Named Defendant is Mr. Pete Geren, Secretary of the Army effective July 16, 2007. The Court uses "Army" for convenience.  Mr. Geren was substituted as the proper defendant in this case automatically by operation of Fed. R. Civ. P. 25(d).  The original defendant was Dr. Francis J. Harvey, Mr. Geren's predecessor.

Asbury alleges that, while employed at WSMR, he was a victim of age discrimination when he was not selected for a temporary promotion in February 2005 [Doc. 32 at 8] and a permanent promotion in August 2005 [Doc. 32 at 11].  He further alleges that he was subjected to a hostile work environment due to his age.  Asbury submitted a Notice of Intent to Sue to the Equal Employment Opportunity Commission (EEOC), dated March 9, 2005, in response to the denial of the temporary promotion in February 2005 [Doc. 32-2 at 1-2], and a second Notice of Intent to Sue, dated October 19, 2005, in response to the denial of the permanent promotion in June 2005. [Doc. 32 at 3-4].  Asbury filed suit in United States District Court for the District of New Mexico on December 19, 2006.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addressing Defendant's motion, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones."  *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988).

The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

(stating that moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.")  Once the movant meets its burden, the nonmovant must identify evidence that would enable a trier of fact to find in the nonmovant's favor. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). The evidence presented at the summary judgment stage need not be produced in a form that would be admissible at trial, so long as the "content or substance of the evidence" is admissible. *See Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir.1998).

## III. DISCUSSION

## A. TIMELINESS OF CLAIMS

The Army asserts that Asbury's claims are time-barred and should be dismissed. The legislative scheme for ADEA claims brought by federal employees provides two alternative routes for pursuing a claim of age discrimination.  A federal employee may invoke the EEOC administrative process and then, if dissatisfied with the outcome, file suit in federal district court. 29 U.S.C §§ 633a(b)-(c).  This option closely resembles the enforcement schemes under both Title VII and the section of the ADEA governing private plaintiff claims.

Alternatively, a federal employee may choose to bypass the administrative process and file a civil action directly in federal district court.  This "administrative bypass" option is not available for Title VII claims or claims by private plaintiffs under the ADEA. 29 U.S.C. §§ 633a(c)-(d).  If the administrative bypass option is selected, the ADEA requires the employee to submit a notice of intent to sue to the EEOC within 180 days of the alleged act of discrimination and then wait a minimum of thirty days before filing the action. 29 U.S.C. 633a(d); *see Stevens v. Dep't of Treasury*, 500 U.S. 1, 6-7 (1991).

In this case, Asbury selected the administrative bypass option and satisfied these express requirements, providing notice within 180 days of each alleged discriminatory act and then waiting thirty days to file suit. He filed suit on December 19, 2006, 680 days after the first cause of action accrued and 489 days after the second cause of action accrued. The issue before the Court is what limitations period, adopted from an analogous statute, should be applied to federal ADEA claims brought directly to federal court (i.e., bypassing the EEOC administrative procedure).

The section of the ADEA governing the rights of federal employees "contains no express statute of limitations. Indeed, [it] says nothing about the outside date for the filing of suit (regardless of whether an employee has elected to undergo or to bypass the administrative process)." *Rossiter v. Potter*, 357 F.3d 26 (1st Cir. 2004); *see also Larson on Employment Discrimination* § 141.02 [2] (2008). The Supreme Court, without expressly stating the proper limitations period to apply to ADEA claims against the federal government, explained the proper analysis is to "assume, as we have before, that Congress intended to impose an appropriate period borrowed either from a state statute or from an analogous federal one." *Stevens*, 500 U.S. at 7 (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.* 483 U.S. 143, 146-148 (1987)); *see also Jones v. Runyon*, 32 F.3d 1452, 1455 (10th Cir. 1994). "In borrowing a statute, a reasonable source is a 'statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here--a statute that is, in fact, an analogy to the present lawsuit.'" *Jones*, 32 F.3d at 1456 (quoting *Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983)).

In cases involving federal employees who pursue ADEA claims through the administrative process, courts, including the 10th Circuit, have frequently found the Title VII limitations period most analogous and, therefore, have adopted it.  *See, e.g., Jones*, 32 F.3d at 1456; *Burzynski v. Cohen*, 264 F.3d 611, 619 (6th Cir. 2001); *Long v. Frank*, 22 F.3d 54, 56 (2d Cir. 1994);  *see also Larson, supra* ("The majority of courts that have addressed the issue favor the Title VII scheme . . . ").  However, the issue of whether to adopt that same period for claims brought through the administrative bypass option is one of first impression in the Tenth Circuit and has divided the only two circuits which appear to have considered the question directly.  The Eleventh Circuit, in *Edwards v. Shalala*, 64 F.3d 601 (11th Cir. 1995), held that the analogous limitations period from Title VII is the appropriate period to apply, while the First Circuit, in *Rossiter*, 357 F.3d at 26, held that the limitations period should be borrowed from the Fair Labor Standards Act (FLSA), 29 U.S.C. § 255(a).

In reaching a decision on this issue, the Court recognizes there are certain benefits in the application of the Title VII limitations period rather than that of the FLSA.  Adopting Title VII for bypass cases as well as administrative cases would provide continuity to the ADEA enforcement structure--every plaintiff would be subject to the same limitations period, regardless of the status of their employer or the procedure by which they pursued their claims. The fact that the bulk of the ADEA enforcement structure is based on that of Title VII also supports a Title VII adoption.[2] The problems with this approach, however, as articulated by the First Circuit in

---

[2] The first two sections of § 633a were "patterned after" the sections of Title VII which extended protection to federal employees. *Edwards*, 64 F.3d at 606 (quoting *Lehman v. Nakshian*, 453 U.S. 156, 163-164 (1981)). Senator Bentsen, who sponsored the bill expanding ADEA protection to federal employees, stated that "[the] measures used to protect Federal employees [from age discrimination] would be substantially similar to those incorporated" in amendments to Title VII which expanded protection to federal employees.  118 Cong. Rec. 24397 (1972).  However, this line of reasoning fails to address that the dispute over administrative bypass cases deals with

*Rossiter*, are not insignificant.  First, adoption of the Title VII limitations period ignores the differences between a plaintiff who has invoked the EEOC administrative procedure and one who opts to bring his case directly to federal court.   In stressing this same point, the *Rossiter* court cited *Burnett v. Grattan*, 468 U.S. 42 (1984), where Justice Marshall discussed the "functional differences" between filing an administrative claim, a relatively simple act, and bringing a claim directly to court, which requires, *inter alia*, procurement of counsel or preparation to proceed *pro se*, sufficient investigation to draft pleadings that meet the requirements of federal rules, establishment of the amount of damages, and the actual preparation of formal legal documents.  *Id.* at 50-51.  "An appropriate limitations period must be responsive to these characteristics of litigation under the federal statutes." *Id.* at 50.  Justice Marshall also noted that "borrowing an administrative statute of limitations ignores the dominant characteristic of civil rights actions: they belong in court." *Id.*  Further, as the purpose of the ADEA is to bring equality to the workplace, this Court is wary of adopting a rule of administrative convenience at the risk of constricting the protections designed to effectuate that statutory goal.  *See Naton v. Bank of Cal.*, 649 F.2d 691, 696 (9th Cir. 1981) ("The ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment.").

Adoption of the Title VII limitations period  also appears to run counter to the Supreme Court's language and holding in *Stevens v. Department of Treasury*, 500 U.S. 1 (1991).  *Stevens* involved an ADEA suit against the Internal Revenue Service brought by a plaintiff through the

---

the third and fourth sections of the ADEA, 29 U.S.C §§ 633a(c)-(d), sections not patterned after Title VII and which contain enforcement provisions not available to Title VII claimants.

administrative bypass option.  The alleged discriminatory act in *Stevens* had occurred on April

27, 1987.  The plaintiff then notified the EEOC on October 19, 1987, the 176th day after the

alleged unlawful practice, of his intent to sue, and filed suit on May 3, 1988, one year and six

days after the alleged unlawful practice and six months and fourteen days after the EEOC was

notified.

After clarifying the statutory provisions of the bypass action–plaintiff must notify the

EEOC within 180 days of the alleged discriminatory act and then wait thirty days to file suit–the

court noted, "[c]learly, petitioner Stevens met both requirements." *Id.* at 6.  The court, in ruling

that the plaintiff's suit was timely, provided the passage that has split the circuits:

> There is no foundation that we can discern for any conclusion that the suit was not
> filed within the applicable period of limitations. The statute does not expressly
> impose any additional limitations period for a complaint of age discrimination.
> We therefore assume, as we have before, that Congress intended to impose an
> appropriate period borrowed either from a state statute or from an analogous
> federal one. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S.
> 143, 146-148 (1987). In this case, we need not decide which limitations period is
> applicable to a civil action under 29 U. S. C. § 633a(c). Stevens filed his suit on
> May 3, 1988, only one year and six days after the allegedly discriminatory event
> of April 27, 1987. That, as respondents acknowledge, *Brief for Respondents 30*,
> "is well within whatever statute of limitations might apply to the action."

*Id.* at 7 (citations omitted).  While the *Edwards* court glossed over any preclusive effect *Stevens*

may have on the adoption of the Title VII limitations period for administrative bypass cases, the

*Rossiter* court read the decision as a "definitive rejection of the importation of Title VII's

limitations period into the framework established by 29 U.S.C. § 633a(c)-(d)." 357 F.3d at 30.

The First Circuit based this conclusion on "two principal lines of reasoning.  First, the entire

focus of the *Stevens* Court's inquiry was on the date of the alleged discrimination as the accrual

date for limitations purposes.  Under Title VII, the relevant date would have borne some relation

to final agency action, or at least to the expiration of the 30-day notice period." *Id.*  Secondly, the

court noted that "if Title VII's temporal requirements were to be applied to bypass actions,

Stevens's claim would have been time barred." *Id.* at 30.  This is because, under Title VII, the

plaintiff would have had no more than120 days from the filing of his notice to commence a civil

action: the 30-day waiting period plus the 90-day Title VII limitations period.  Since the plaintiff

filed suit 197 days after notifying the EEOC of his intent to sue, "the Supreme Court could not

have found his suit timely unless it rejected the proposed incorporation of Title VII's limitations

period into the ADEA's bypass scheme." *Rossiter*, 357 F.3d at 31.

As *Rossiter* discusses, therefore, while the Supreme Court was not presented with the

precise issue in *Stevens*, the language and holding of that case impliedly preclude the adoption of

the Title VII limitations period for ADEA administrative bypass cases.  The analysis of *Stevens*

by the Eleventh Circuit in *Edwards* impresses this Court as less convincing; by simply labeling a

passage in a Supreme Court decision as dicta, the court absolves itself of any need to address the

plain implications of that statement.[3]

The Court also notes that although adoption of the FLSA limitations period would be an

anomaly within the ADEA enforcement structure, the administrative bypass action is itself an

anomaly, providing a right that is unavailable in other parts of the ADEA or in Title VII.   Even if

adoption of the FLSA limitations period may create some inconsistency in the ADEA

enforcement scheme, the Court cannot view that fact as an absolute deterrent.  Attempting to

_____

[3] The *Rossiter* opinion  rejects the argument that the Supreme Court's comment--that Stevens's suit had
been brought "well within whatever statute of limitation might apply," 500 U.S. at 8--is dicta, stating, "when a
statement in a judicial decision is essential to the result reached in the case, it becomes part of the court's holding."
357 F.3d at 31 (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 66-67 (1996))(defining as binding both the court's
result and "those portions of the opinion necessary to that result.")

construe statutory provisions consistently within different sections of one statute designed for different purposes is not always the most solid legal foundation. *See, e.g., Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 314-315 (2006).

The Court therefore adopts the *Rossiter* analysis and holds that the correct rule of timeliness to be used in conjunction with ADEA bypass actions brought under 29 U.S.C. § 633a is that the FLSA's limitations period applies. The FLSA provides plaintiffs with a two-year, or 730-day, limitations period which begins to run when the cause of action accrues. 29 U.S.C. § 255(a). Asbury filed suit 680 days after the first cause of action accrued and 489 days after the second cause of action accrued. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (holding that the proper focus in determining the commencement of a limitations period in an employment discrimination action is the communication of the allegedly discriminatory decision); *Brown v. Unified Sch. Dist.* 501, 465 F.3d 1184 (10th Cir. 2006). Under this standard Plaintiff's suit is thus timely. Accordingly, the Court will proceed to analyze the merits of the motion for summary judgment.

**B. FAILURE TO PROMOTE**

The ADEA, in part, prohibits an employer from "failing or refusing to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Thus, a plaintiff suing under the ADEA must prove that the challenged employment action was motivated, at least in part, by his age. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). In order to meet this burden, the plaintiff must present either direct evidence of the employer's discriminatory intent or circumstantial evidence creating an inference

9

of discriminatory motive, in which case the court will apply the McDonnell Douglas

burden-shifting analysis. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *Greene v.*

*Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996).

### 1. Direct or Indirect Evidence

Asbury contends that he presented direct evidence of age discrimination, thus making the

McDonnell Douglas analysis inapplicable.  Specifically, he argues that a prior EEOC

administrative ruling, which found that WSMR had discriminated against another employee

based on age, and verbal statements by WSMR officials, including those by Col. Huff, retired

Commander of the White Sands Test Center at WSMR, and Mr. John Jensen, a former Director

at WSMR (GS-15), constitute direct evidence of "an existing policy which itself constitutes

discrimination." *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990)

(citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1984)).  Colonel Huff is

alleged to have made a statement in a town hall meeting about getting rid of the aging workforce.

[Doc. 39-2 at 4, ¶ 4; *see also* Doc. 39-6 at 2, ¶ 3].  Mr. Jensen is alleged to have expressed the

view that younger people were "smarter and more capable" [Doc. 39-2 at 3, ¶ 2] [4] and that older

workers could not learn new technology. [Doc. 39-6 at 3, ¶ 6].   Mr. Jim Noble, former Chief of

Operations Control Division NR-C, claims to have heard Colonel Huff, Mr. Jensen and other

management officials repeat this phrase on a frequent basis, as well as the phrase "seeking

younger blood." [Doc. 39-6 at 2-3, ¶¶ 3, 6].

---

[4] Mr. Jensen retired from WSMR in March 2004, approximately one year prior to the first promotion decision at issue here. (Jensen Decl. ¶ 1).

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. [It] requires proof of an existing policy which itself constitutes discrimination or oral or written statements on the part of a defendant showing a discriminatory motivation." *Hall v. United States DOL*, 476 F.3d 847, 854-55 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 489 (2007) (quotations and citations omitted). "Our precedent makes clear that evidence is not 'direct' if an inference of discrimination is required." *Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007).

In addressing Asbury's contention that evidence presented constitutes direct evidence, the Court find his reliance on *Ramsey* and *Thurston* misplaced.  In *Thurston*, the stated transfer policy of the employer was found to be based on age and thus discriminatory on its face. 469 U.S. at 121.  Because evidence of that policy was deemed direct evidence of discrimination, the court ruled that the McDonnell Douglas burden shifting framework was inapplicable. *Id.*  As the *Ramsey* court states, "*Thurston* does not hold that the McDonnell Douglas shifting burdens do not apply where there is direct evidence of personal bias, but [rather] where there is 'direct evidence of discrimination.'" 907 F.2d. 1004, 1008 (quoting *Thurston*, 469 U.S. at 121).

In *Ramsey*, a Title VII case, the plaintiff presented evidence that the defendant "was widely known to have ideas about women's place in the workforce[,]" and the defendant even testified that he felt women were better suited to some jobs than to others. 907 F.2d. at 1008. The defendant's statements, the *Ramsey* court found, constitute "circumstantial or indirect evidence, and not direct evidence of discrimination within the meaning of *Thurston*." *Id.*  The *Ramsey* court also stated that "an offer of specific instances of discriminatory statements, from which it was argued that the determining cause of the employment decision might be inferred,

11

[is] not direct evidence of causation on the employment decision." *Id.*; *see also Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir. 1996) ("Statements which on their face are expressions of personal opinion . . . can only support an inference of discrimination if the trier of fact finds the inference reasonable, and so constitute only circumstantial or indirect evidence of discrimination against the plaintiff."); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136-1137 (10th Cir. 2000) (holding that ageist comment by individual with a position of authority within the defendant employer's organization constitutes "his personal opinion, not an existing company policy, and therefore . . . does not constitute direct evidence of discrimination.")

For Asbury's argument to be valid with regard to the discriminatory statements, then, the evidence would need to show that Col. Huff, the selecting official in both promotion decisions at issue, acted upon the discriminatory statements he is alleged to have made. *Ramsey*, 907 F.2d at 1008.[5]  Asbury has failed to produce such evidence.

The contention that the prior unrelated EEOC decision constitutes direct evidence of discrimination can be similarly dismissed.  This decision pertains to actions taken in 2000 and 2001, whereas Col. Huff did not begin working at WSMR until August 11, 2003. [Doc. 32-11 at 1, ¶ 1].  The alleged ageist statements made by WSMR officials and the prior unrelated EEOC decision are "[a]t most . . . circumstantial  evidence of discriminatory intent because they 'require the trier of fact to infer that discrimination was a motivating cause of an employment decision.'" *Stone*, 210 F.3d at 1137 (quoting *EEOC v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996)).

---

[5] The fact that Mr. Jensen retired from WSMR more than a year before the first promotion decision at issue clearly precludes his alleged discriminatory statements from being considered direct evidence of discrimination.

12

### 2. The McDonnell Douglas Burden Shifting Analysis

Having determined that Asbury has not presented direct evidence, the Court must turn to the McDonnell Douglas burden-shifting analysis to assess the circumstantial evidence. Under the McDonnell Douglas framework, a plaintiff alleging a failure-to-promote claim under the ADEA must initially establish a prima facie case demonstrating: (1) he was within the protected age group; (2) he was qualified for the position; (3) he was not selected for the position; and (4) the position remained open or a younger candidate was selected for the position. *Furr*, *supra*, 824 F.2d at 1542. It is undisputed that Asbury established a prima facie case of age discrimination on both of his failure-to-promote claims.

Upon the establishment of a prima facie case, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the decision. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). If the defendant offers evidence of a legitimate, nondiscriminatory reason for its employment decision, "the presumption of discrimination established by the prima facie showing 'simply drops out of the picture.'" *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994) (quoting *St. Mary's Honor Ctr. v. Hicks*, 113 S. Ct. 2742, 2749 (1993)).

The Army asserts that it chose Mr. Gilbert over Asbury for the temporary promotion to Director of the IRCC because Mr. Gilbert had superior technical skill and experience in the field of distributive testing. Mr. Gilbert, as division chief within the Range Control Directorate, had been working on the development of the IRCC for two years prior to the promotion and knew the client organizations and issues related to the IRCC. On the other hand, Asbury had not briefed any IRCC issues and was not involved in the daily operation of the IRCC. [Doc. 32-11 at 2, ¶ 4].

13

With regard to the permanent promotion to IRCC Director, the Army asserts it chose Mr. Gilbert over Asbury based on the findings of a resume review panel which scored candidates based on categories deemed relevant to the position, including knowledge of distributed testing, ability to develop long range plans and policy, and ability to supervise and lead a team.  The three-member panel convened in June 2005  and consisted of Mr. Mario Correa, Mr. Gary Bones and Ms. Vicki Reynolds, who chaired the panel.  Asbury and Mr. Gilbert were among the sixteen applicants for the position and each was scored in five areas determined to be relevant to the position.  Mr. Gilbert's total score was 126, the highest in the group.  Asbury had 99 points, a numerical tie for fourth.  Ms. Reynolds provided the compiled scores and a recommendation that the top five candidates be interviewed to Col. Huff. [Doc. 32-12 at 2, ¶ 5]. Col. Huff elected to interview the top three candidates and selected Mr. Gilbert for the position. [Doc. 32-11 at 2, ¶ 4].  Because these reasons are not facially prohibited by the ADEA, the Army has articulated legitimate, nondiscriminatory reasons for not promoting Asbury.

Once the employer meets the burden of presenting a legitimate, nondiscriminatory reason for the decision at issue, summary judgment is warranted "unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).  In order to meet this burden, "the plaintiff must present enough evidence to support an inference that the employer's reason was merely pretext, by showing either 'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Cone v. Longmont United Hospital Assoc.*, 14 F.3d 526, 530 (10th Cir. 1994) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941

F.2d 1115, 1121-22 (10th Cir. 1991)).  "Pretext can be shown by 'such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy

of credence and hence infer that the employer did not act for the asserted non-discriminatory

reasons.'" *Riggs*, 497 F.3d at 1118 (quoting *Rivera v. City & County of Denver*, 365 F.3d 912,

925 (10th Cir. 2004)).  "The plaintiff's evidence can also allow for an inference that the

'employer's proffered non-discriminatory reasons [were] either a post hoc fabrication or

otherwise did not actually motivate the employment action (that is, the proffered reason is a

pretext).'" *Plotke*, 405 F.3d at 1102-1103 (alteration in original) (quoting *Fuentes v. Perskie*, 32

F.3d 759, 764 (3d Cir. 1994). Asbury has failed to meet his burden.

      Asbury has not created a genuine issue "concerning the sincerity of the proffered reasons"

for the Army's decision not to promote him.  *Cone*, 14 F.3d at 530.  In making the argument that

the Army's reasoning was pretext, Asbury contends there is evidence of a system of promotion at

WSMR designed to artificially inflate the credentials of younger employees, which led directly to

Mr. Gilbert gaining the promotions at issue instead of Asbury.  He also argues that the resume

grading system is "broken," and proffers his own subjective belief in his superior qualifications.

Finally, he points to a prior adjudication of an ADEA claim brought by a different employee

against WSMR, as well as random ageist comments made by WSMR officials.  This evidence

and argument does not adequately support an inference of discrimination.

      Asbury's presentation consists mainly of his assertion that the Army pursued an

established procedure for promoting individuals based on age by systematically awarding non-

competitive details to younger employees so as to provide them with the experience and

credentials to gain later promotions. [Doc. 39-2 at 4, ¶ 4]. Specifically, Asbury claims that Mr. Gilbert was granted a non-competitive detail in November 2003 in order to provide him with the necessary qualifications to gain the two subsequent promotions at issue in this case. [Doc. 39-2 at 4-5, ¶ 6; at 10, ¶ 22]. These qualifications form the foundation of the Army's proffered non-discriminatory rationale for granting the promotions to Mr. Gilbert over Asbury. In essence, Asbury concedes that Mr. Gilbert was more qualified for the two promotions at issue but asserts that the manner in which Mr. Gilbert gained these qualifications was a pretext for discriminatory motives.

Assuming at this stage that such a policy exists at WSMR, Asbury's cause of action accrued with the initial discriminatory act, when the Army failed to promote him in November 2003, instead granting the detail non-competitively to a younger employee. The Supreme Court, in *National Railroad Passenger Corporation v. Morgan*, held that discrete discriminatory acts, such as failure to promote, "are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging the act." 536 U.S. 101, 113 (2002); *see also Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (holding that each discrete discriminatory act "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted.")(quoting *Morgan*, 536 U.S. at 113). Asbury thus cannot use the Army's alleged discriminatory intent in performing the original, now-time-barred discrete action, to attach discriminatory intent or pretext to failure-to-promote decisions based on neutral promotion procedures. *See Haynes v. Level 3 Commc'ns LLC*, 456 F.3d 1215, 1226-27 (10th Cir. 2006) (time-barred discriminatory action ultimately caused plaintiff's termination from employment; plaintiff was not allowed to use time-barred

16

action as basis of discriminatory-discharge claim).  In other words, Asbury was required to challenge the allegedly discriminatory, non-competitive promotion at the time it happened. Having failed to do so, he cannot now in effect contest that action by claiming it was unfairly used to provide Gilbert with experience that was denied to him.  *See, e.g., United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (flight attendant failed to challenge employer's discriminatory policy when she was forced to resign; employer was therefore entitled to treat that past act as lawful, and flight attendant was not allowed to later complain about continuing effects of the discriminatory policy).

From the point that Asbury learned that he had not received the November 2003 promotion, he had 180 days to file an EEOC complaint, or in the alternative 180 days to file a notice of intent to sue with the EEOC and then (based on this Court's adoption of the FLSA limitations period, discussed *supra*) two years to bring suit in federal court.  As no timely complaint was filed on that promotion and the instant suit was brought on December 19, 2006, over three years after the November 2003 cause of action accrued, any claims derived from this incident are time barred.

Essential to the Court's holding is the Court's determination that Asbury has failed to present sufficient evidence to show that the two failure-to-promote decisions at issue in this case were "independently discriminatory." *Morgan*, 536 U.S. at 113.  The record contains no evidence that the temporary promotion was discriminatory aside from the argument that it resulted from the time-barred November 2003 promotion.  With regard to the permanent promotion, included in evidence is a record of the actual scores awarded each candidate in five relevant categories by the resume scoring panel convened to assess candidates for the permanent promotion at issue.

17

[Doc. 32-12 at 4].  This scoring matrix shows that each of the three members of the resume scoring panel gave Mr. Gilbert equal or higher scores than Asbury in every category.  Col. Huff interviewed the candidates with the three highest scores, including Mr. Gilbert and excluding Asbury. [Doc. 32-11 at 2, ¶ 5].

Asbury's evidence concerning the resume scoring system used in the permanent promotion decision is insufficient to allow for the inference that the system constitutes a pretext for discriminatory motives.  Asbury relies in part on testimony stating his subjective belief that he was a more qualified candidate than Mr. Gilbert. [Doc. 39-2 at 5, ¶ 7; at 10, ¶ 23].  Nearly all of this testimony relates directly to the November 2003 promotion, and thus, as discussed *supra*, has "no present legal consequences." *Evans*, *supra*, 431 U.S. at 558.  Furthermore, Asbury's subjective belief in his superior qualifications "fails to give rise to a genuine issue of material fact sufficient to ward off summary judgement." *MacKenzie v. Denver, City and County of*, 414 F.3d 1266, 1278 (10th Cir. 2005) (citing *Bullington v.United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999); *Simms v. Okla. ex rel. Dept. of Mental Health & Substance*, 165 F.3d 1321, 1329-30 (10th Cir. 1999)). "Unless the disparity in employees' qualifications are obvious, 'we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question.'" *MacKenzie*, 414 F.3d at 1278 (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)).

Asbury further alleges that the grading system used to evaluate candidates is discriminatory in its design, claiming that resume criteria was written to eliminate older employees and benefit younger employees who had received prior non-competitive details. [Doc.

18

39-2 at 4-5, ¶ 6; Doc. 39-3 at 4, ¶ 9].  In support of this bare allegation, however, Asbury offers

no specific  evidence of discriminatory design in the resume grading system.  His conclusory

opinions are insufficient to allow for a reasonable inference to be drawn that the system is part of

a "post-hoc fabrication" and pretext for discriminatory motives. *Plotke*, 405 F.3d at 1102

(quotation omitted).

As further evidence of pretext, Asbury submits the  record of adjudication of a prior,

unrelated ADEA claim brought by Ricardo Medina, a former WSMR employee, against the

Army. [Doc. 39-4 at 2-12].  The court, in that matter, found that the Army's failure to promote

Mr. Medina was motivated by discriminatory animus and that the proffered legitimate reason for

the decision was merely pretext for discrimination. [*Id.* at 10].  This evidence is insufficient to

support an inference that the Army's non-discriminatory rationale for failing to promote Asbury

was pretextual. *See Becker v. ARCO Chem. Co.*, 207 F.3d 176, 184-94 (3rd Cir. 2000); *Schrand*

*v. Federal Pacific Electric Co.*, 851 F.2d 152, 156 (6th Cir. 1998).[6]

The selecting official in the prior, unrelated  decision was Mr. John Jensen, whereas the

selecting official in the two decisions at issue here was Col. Huff.  In fact, as noted *supra*, Mr.

Jensen retired from WSMR over a year before the first promotion decision at issue in this case

was made.  Further, a single prior adjudication finding discriminatory animus in an employer's

decision does not carry sufficient weight to raise an inference of discriminatory animus in all

subsequent allegations of discrimination against that employer, nor does it establish that said

employer has established a routine practice of discrimination. *Cf. G.M. Brod & Co. v. U.S. Home*

---

[6] "The question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 128 S. Ct. 1140, 1147 (2008).

*Corp.*, 759 F.2d 1526 (10th Cir. 1985) (holding that collateral evidence of routine practice is only admissible when the examples offered to establish such a pattern of conduct are "numerous enough to base an inference of systematic conduct" and to establish "one's regular response to a repeated specific situation.") (quoting *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977) (footnotes omitted)).

Asbury also relies on evidence of alleged ageist comments made by Col. Huff ("getting rid of the aging workforce") and Mr. Jensen (younger people are "smarter and more capable" and older workers could not learn new technology), discussed *supra*.  For purposes of this motion, the Court will assume that Col. Huff and Mr. Jensen made these comments in the contexts asserted by Asbury.[7] *Cone*, 14 F.3d at 531.  Nonetheless, these statements are insufficient to show that the Army's promotion decisions were motivated by discriminatory animus.

The statements in question are best characterized as stray remarks, as Asbury has failed to demonstrate a nexus exists between these allegedly discriminatory statements and the Army's decision to award the two promotions at issue to a younger employee. *Id.*  "Age-related comments referring directly to the plaintiff can support an inference of age discrimination, but isolated [or] ambiguous comments may be, as here, too abstract to support such an inference." *Stone*, 210 F.3d at 1140 (quoting *Cone*, 14 F.3d at 531) (internal quotations omitted).   "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus ... " *Cone*, 14 F.3d at 531.  A plaintiff must demonstrate "that age actually played a role in the

---

[7] The Court notes, however, that Asbury's evidence concerning these statements is exceedingly sparse.  For the most part, he provides no specific information as to where or when these statements were made.

defendant's decisionmaking process and had a determinative influence on the outcome." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994).

As Mr. Jensen retired prior to the promotion decisions at issue here, his alleged comments cannot be considered in assessing any discriminatory motivation in the promotion decisions at issue.  "[A]ge related comments by non-decisionmakers are not material" in showing that the Army's decision not to promote Asbury was based on age discrimination.  *Cone*, 14 F.3d at 531.

Although Col. Huff, who was directly involved in both decisions to grant Mr. Gilbert the promotions at issue, allegedly expressed a desire to get rid of the aging workforce, no evidence has been presented to show a connection between this statement and a discriminatory motive in failing to promote Asbury. *Id.*  For example, Asbury has not presented evidence that the statements were made at the time Col. Huff made the promotion decisions challenged by Asbury. The allegedly discriminatory statements in the contexts presented therefore do not support an inference that the promotion decisions at issue were motivated by illegal age bias.  *Id.*  Asbury was required to show "some correlation between the comments and the act.  [His] evidence does not show the comments were directed toward [him], [his] position," or the promotion policies of WSMR.  *Id.*

Based on the foregoing, the Court concludes that Asbury failed to proffer evidence that tended to show the Army's  legitimate, non-discriminatory reasons for failing to promote him were a pretext for age discrimination. The Army, therefore, is entitled to summary judgment on each of Asbury's failure-to-promote claims.

**C. HOSTILE WORK ENVIRONMENT**

Asbury also claims that his supervisor, Mario Correa, created a hostile work environment. Asbury alleges that Mr. Correa bypassed his supervisory authority, denied him opportunities for developmental training, excluded him from staff meetings, and reduced his managerial responsibilities.  Asbury also claims that Mr. Correa referred to him as "that Asbury." [Doc. 39-2 at 7, ¶ 12].  Asbury further asserts that a general lack of opportunity for promotion contributed to the hostile work environment.[8]

For a hostile work environment claim to survive a motion for summary judgment, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998); *see also Carter v. Newman Mem'l County Hosp.*, 49 Fed. Appx. 243, 247 (10th Cir. 2002) (applying the hostile work environment standard from *Davis*, a Title VII case, to an ADEA case).  For purposes of evaluating whether the plaintiff's working environment was sufficiently hostile or abusive to  warrant relief, the court examines: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the plaintiff's work performance. *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998). The plaintiff must establish "that the environment was both objectively and subjectively hostile or abusive." *Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998).  A plaintiff  must also produce evidence

---

[8] Again, Asbury's evidence is extremely general and lacking in detail, and thus does not carry much weight.

from which a rational jury could infer that he or she was targeted for harassment based on age. *Cf. Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998) (sex discrimination case holding, "[t]he plaintiff must produce evidence that she was the object of harassment because of her gender.")

"The Supreme Court has instructed that courts judging hostility should filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of age-related jokes, and occasional teasing." *MacKenzie, supra*, 414 F.3d at 1280 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). This screening is in place to ensure that Congressional enactments such as the ADEA do not become trivialized as a civility code. *Faragher*, 524 U.S. at 788. "In particular, courts should filter out offhand comments, and isolated incidents (unless extremely serious)." *MacKenzie*, 414 F.3d at 1280.

Applying these principles, the Court finds that Asbury's claim of a hostile work environment fails on several fronts. First, Asbury proffers no evidence that any of the alleged hostile acts were motivated by age discrimination. In order to bring a hostile work environment claim under the ADEA, a plaintiff must show that the hostility derives, at least in part, from age discrimination. The actions of Mr. Correa, including allegedly referring to Asbury as "that Asbury," could have been motivated by any number of factors, including ordinary management decisions or office dynamics. Without evidence of discriminatory animus, there is no support for the hostile work environment claim.

Even assuming Asbury could show that age discrimination motivated Mr. Correa's actions, they do not rise to the level of severity or pervasiveness required to withstand a summary judgement motion. The actions described – precluding him from meetings; bypassing his

authority; calling him "that Asbury" – simply do not rise to the level of intimidation, ridicule or insult necessary to constitute an abusive work environment.

Based on the foregoing, the Court concludes that the Army is entitled to summary judgment on Asbury's hostile work environment claim.  Asbury's hostile work environment claim will therefore be dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Defendant is entitled to summary judgment on Plantiff's complaint, and  this case will be dismissed.

Dated this 9th day of September, 2008.


BRUCE D. BLACK
United States District Judge